IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT LANE RHOME,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 15-754 |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 9th day of September, 2016, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 12) be, and the same hereby is, granted, and the Commissioner's motion for summary judgment (Document No. 14) be, and the same hereby is, denied. The Commissioner's decision dated February 18, 2014, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to *sentence 4* of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by the substantial evidence standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting* Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (*quoting* Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff filed his pending application for SSI on May 10, 2010, alleging a disability onset date of September 14, 2008, due to a seizure disorder, depression, anger issues and back problems. Plaintiff's application was denied initially. Following a hearing before an ALJ, an unfavorable decision was issued on January 6, 2012. However, this decision subsequently was vacated by the Appeals Council and plaintiff's case was remanded for further administrative proceedings.

On remand, a different ALJ held a new hearing on December 4, 2013, at which plaintiff, represented by counsel, appeared and testified. On February 18, 2014, the ALJ issued a decision finding that plaintiff is not disabled. On April 24, 2015, the Appeals Council denied review making the ALJ's February 18, 2014, decision the final decision of the Commissioner.

Plaintiff was 23 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(c). He has at least a high school education but has no past relevant work experience and he has not engaged in any substantial gainful activity since his alleged onset date or at any other time.

After reviewing plaintiff's medical records and hearing testimony from plaintiff, plaintiff's father and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within

AO 72
(Rev. 8/82)

the meaning of the Act. The ALJ found that although plaintiff has borderline intellectual functioning, as well as a number of other physical and mental impairments[1] that satisfy the *de minimus* standard for severity at step 2 of the sequential evaluation process,[2] those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform a range of work at the light exertional level but with numerous restrictions necessary to accommodate his mental and physical impairments.[3] Taking into account these limiting effects, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon his age, education, work experience and residual functional capacity, including housekeeper/cleaner, marker, and electrical accessories assembler. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period

---

[1] Specifically, the ALJ found that plaintiff also has the following severe impairments: seizure disorder, kyphoscoliosis with a syrinx on the spinal cord, mood disorder/major depressive disorder, cyclothymia, generalized anxiety disorder, personality disorder, and social phobia. (R. 16).

[2] At step two, an impairment is "severe" if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §416.920(c). The step two inquiry is a *de minimus* screening device and, if the evidence presents more than a slight abnormality, the step two requirement of severity is met. Newell v. Commissioner of Social Security, 347 F.3d 541, 546 (3d Cir. 2003).

[3] Specifically, the ALJ found that plaintiff can perform light work that "requires no climbing ladders, ropes or scaffolds; avoids all hazards such as dangerous moving machinery and unprotected heights; is limited to simple, routine, and repetitive tasks performed in a low stress job, defined as having only occasional decision making required, occasional changes in the work setting and no strict production quotas; requires no interaction with the general public and minimal interaction with co-workers and supervisors; and involves work that requires working with things rather than people." (R. 18).

of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[4] 20 C.F.R. §416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

In this case, plaintiff's only challenge is to the ALJ's step 3 finding[5] that his severe impairment of borderline intellectual functioning does not meet or equal the listing for intellectual disability at §12.05C.[6] Because the ALJ did not adequately explain the methodology he utilized

---

[4] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §416.920a.

[5] At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Admin., 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education or work experience, from performing any gainful activity. 20 C.F.R. §416.925(a); Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000). "If the impairment is equivalent to a listed impairment, then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119. The ALJ must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Burnett, 220 F.3d at 119.

[6] Listing 12.05 was revised in 2013 and now refers to "intellectual disability" rather than "mental retardation." See Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013). The substance of the listing, however, has not changed. Illig v. Commissioner of Social Security, 570 Fed. Appx. 262, 265 n. 7 (3d Cir. 2014).

AO 72
(Rev. 8/82)

in determining that plaintiff does not meet the introductory criteria of Listing 12.05, this case will be remanded to the Commissioner for further proceedings.

Listing 12.05 provides in pertinent part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05.

Here, the ALJ found that plaintiff does not meet Listing 12.05 because he failed to establish "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested " prior to age 22, as required under the introductory paragraph of that listing.[7] (R. 17-18). In making this finding, the ALJ identified a number of factors in the record which led him to conclude that plaintiff's "demonstrated abilities in adolescence clearly indicate an inherent level of intellectual functioning that falls within the low average or borderline range, as opposed to any clear or obvious 'listing-level' mental retardation." (R. 18).

These factors included, *inter alia*, that: plaintiff graduated from high school; he is able to read, write, and do simple math; he put together a successful power point presentation for his senior project; and, he had vocational training in business and obtained a business certificate. In addition,

---

[7] Because the ALJ concluded that plaintiff did not meet the introductory criteria of Listing 12.05, he did not analyze whether any of the requirements in provisions A through D of that listing are satisfied, other than to recognize 2011 IQ scores falling above the ranges noted in provisions B through D.

the ALJ noted that his conclusion is supported by the diagnosis of the consultative examiner, who diagnosed plaintiff with borderline intellectual functioning rather than mental retardation. (R. 18).

As an initial matter, in order for a claimant's impairment to meet a listing, it must satisfy all of the specified criteria of the listing at issue. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. 416.925(d). Accordingly, this court consistently has held that, *in addition to* the criteria of at least one of the A through D provisions, a claimant *also* must meet the introductory criteria of Listing 12.05. *See, e.g.*, Grates v. Colvin, 2016 WL 1117612 (W.D.Pa., March 21, 2016); Lansdowne v. Astrue, 2012 WL 4069363 (W.D.Pa., Sept. 17, 2012); Grunden v. Astrue, 2011 WL 4565502 (W.D. Pa., Sept. 29, 2011). This conclusion is in full accord with both the Regulations themselves and the case law of this circuit.[8]

Having concluded that plaintiff was required to meet the introductory criteria of Listing 12.05, the court must next consider whether the ALJ's finding that plaintiff does not meet those criteria is supported by substantial evidence. Because the court cannot meaningfully determine the ALJ's basis for finding that plaintiff does not meet the requirement of deficits in adaptive functioning before age 22, this court must conclude that the ALJ's finding is not supported by substantial evidence, and will remand this case to the ALJ for additional evaluation. *See* Jones v.

---

[8] The requirement that plaintiff must meet the introductory criteria to §12.05 clearly and unequivocally is stated in the explanatory notes to the mental disorder listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A (if claimant's impairment satisfies diagnostic description in introductory paragraph and any one of the four sets of criteria in A through D, the impairment meets Listing 12.05). The United States Court of Appeals for the Third Circuit likewise has indicated that a claimant must satisfy the requirements of the introductory paragraph of Listing 12.05. *See* Gist v. Barnhart, 67 Fed. Appx. 78, 81 (3d Cir. 2003)("[a]s is true in regard to any 12.05 listing, before demonstrating the specific requirements of Listing 12.05C, a claimant must show proof of a 'deficit in adaptive functioning' with an initial onset prior to age 22."); Cortes v. Commissioner of Social Security, 255 Fed. Appx. 646, 651 (3d Cir. 2007) (to meet the Listing 12.05, the claimant must prove, *inter alia*, "subaverage general intellectual functioning with deficits in adaptive functioning" manifesting before age 22). *See also* Illig, 570 Fed. Appx. at 266 n. 9 ("We will assume without deciding that showing deficits in adaptive functioning is a fourth requirement of Listing 12.05C").

Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (requiring the ALJ to sufficiently explain his findings to permit meaningful review).

The Regulations do not define "deficits of adaptive functioning," nor do they identify guidelines by which to assess the existence or severity of a claimant's alleged deficits. Logan v. Astrue, 2008 WL 4279820 at *8 (W.D. Pa., Sept. 16, 2008)(D.J. Fischer). However, the Social Security Administration ("SSA") has issued a regulation entitled "Technical Revisions to Medical Criteria for Determinations of Disability", 67 FR 20018-01 (April 24, 2002), to provide guidance on the matter.

In that regulation, the SSA recognized that each of the four leading professional mental health organizations in the United States that deal with intellectual disabilities defines "deficits in adaptive functioning" in a slightly different manner. Logan, 2008 WL 4279820, at *8. These various definitions all require significant deficits in intellectual functioning, but differ as to the age of onset and the method of measuring the required deficits in adaptive functioning. Id. The SSA clarified that it did not seek to endorse the methodology of one professional organization over another, and would allow use of any of the measurement methods endorsed by one of the professional organizations. Id. In order to assess a claimant's alleged intellectual disability to determine if deficits in adaptive functioning exist, the regulation directs that an ALJ should consult either the American Psychiatric Association's DSM-V, the standard set forth by the American Association on Intellectual and Developmental Disabilities or the criteria of the other major mental health organizations. Id.

In this case, it is not clear from the ALJ's decision which organization's standard for measuring deficits in adaptive functioning, if any, he consulted in concluding that plaintiff does not have "deficits in adaptive functioning." Although the ALJ set forth a number of factors which he

considered in support of his conclusion, the court nevertheless is left to guess as to which standard the ALJ employed in his analysis.

Because the ALJ's assessment of whether plaintiff has "deficits in adaptive functioning" fails to comply with the SSA's regulatory directive to identify the standard he used to determine that plaintiff does not meet the introductory criteria to Listing 12.05, he failed to sufficiently explain his findings to permit meaningful review. Accordingly, the ALJ's step 3 finding is incomplete and remand is required for reconsideration of whether plaintiff has established deficits in adaptive functioning prior to age 22. On remand, the ALJ must identify and apply one of the four standards of measurement used by one of the authorized professional organizations in making this determination and must explain his rationale for whether or not plaintiff meets the introductory criteria of 12.05 under the chosen standard.

Should the ALJ determine on remand that plaintiff has established the requisite deficits in adaptive functioning before age 22 under one of the approved standards, he must then consider whether plaintiff meets the criteria of paragraph C of Listing 12.05.[9] As already noted, the ALJ did not evaluate whether plaintiff meets the criteria of 12.05C in this case because he found that plaintiff does not meet the introductory criteria. (R. 18). Although the ALJ did reference intelligence testing in 2011 resulting in scores that were above the range noted in Listing 12.05C, there also is evidence in the record of other IQ testing which resulted in scores falling within that requisite range. (R. 581; 584; 587).

---

[9] In order to meet Listing 12.05C, a claimant must have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The Regulations only require that one of the three IQ scores be in the 60 through 70 range. §12.00D.6.c; Markle, 324 F.3d at 186. Moreover, under the regulations, the second prong of 12.05C is satisfied by a finding that the "other" impairment is "severe" within the meaning of step 2 of the sequential evaluation process. See Markle, 324 F.3d at 186; 20 C.F.R. §416.920(c); 65 Fed. Reg. 50746, 50772 (August 21, 2000).

AO 72
(Rev. 8/82)

While it is true that an ALJ is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record, Markle, 324 F.3d at 186, neither may "[a]n ALJ ... reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record." Morales, 225 F.3d at 318. Thus, if the ALJ should determine on remand that plaintiff has met the introductory criteria of Listing 12.05, he also specifically must consider the requirements of 12.05C and determine the validity of the IQ scores set forth in the record, and must explain his reasons for rejecting any score he may deem invalid.

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: H. Brian Peck, Esq.
The Crossroads Law Firm
198 Canterbury Road
McMurray, PA 15317

Colin Callahan
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219